UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

MICHAEL TUTT                                                                                    PLAINTIFF

v.                                                                                      No. 5:23-cv-157-BJB

GREG SAULS, ET AL.                                                                      DEFENDANTS

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

Michael Tutt sued Greg Sauls, Don Rayner, and other unknown employees of the Webster County Detention Center, all in their individual and official capacities. DN 1-1. Tutt served only Sauls, who (along with the Detention Center) removed the case to federal court, Notice of Removal (DN 1) ¶ 2, and filed an answer in December 2023, *see* DNs 1, 6. After that, no significant activity in the case took place for more than a year. So the Court ordered the parties to confer and file joint or separate status reports. DN 8.

Tutt's attorney, David Mour, filed a status report on February 21, 2025. Mour relayed that he had lost contact with his client, requested 60 days to attempt to find Tutt, and was still trying to serve Rayner. February Status Report (DN 10) ¶¶ 3–5, 7. In response, the Court ordered Mour to file a status report by April 21, 2025, or promptly after any significant development regarding the status of this case. DN 11. The Court also warned that if Tutt didn't turn up by that deadline, through counsel or otherwise, it would have little choice but to dismiss the case for failure to prosecute. *Id.* (citing FED. R. CIV. P. 41(b)).

In compliance with that order, Mour reported that his phone calls, text messages, and letters to Tutt were all for naught. April Status Report (DN 14) ¶ 2. And because he was unable to contact his client, Mour asked to withdraw as counsel. DN 12. After detailing his attempts to contact Tutt about his anticipated withdrawal in a separate filing, Mour concluded that Tutt had "fall[en] off the radar" and wouldn't—or couldn't—"communicate with counsel." Response (DN 17) at 4. Given that seemingly intractable problem, Magistrate Judge King granted Mour's motion on August 1 and ordered Tutt to "obtain new counsel within 30 days … or notify the Court of his intent to proceed *pro se*." DN 18 at 1.

1

Tutt finally surfaced—but took neither course charted by Judge King. Instead, he asked the Court to appoint a lawyer for him. Motion to Appoint Counsel (DN 20) at 1. He explained that Mour couldn't reach him because he was "in a treatment program" in Owensboro called "Rooted Recovery." *Id.* Worried that Mour's withdrawal would cause the dismissal of his case, Tutt "ask[ed] calmly for new counsel." *Id.*

The Magistrate Judge denied Tutt's motion. Federal law provides that judges may—but don't have to—appoint counsel for indigent plaintiffs. *See* 28 U.S.C. § 1915(e)(1). That choice is committed to trial judges' "sound discretion"; indeed, according to some, appointment cannot occur absent "exceptional circumstances." Order Denying Motion to Appoint Counsel (DN 21) at 2 (first quoting *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992); then quoting *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993)). *But see Harrison v. Diamond Pharmacy Servs.*, 707 F. Supp. 3d 718, 723–25 (W.D. Ky. 2023) ("The Sixth Circuit … doesn't appear to have addressed the question when, if ever, a district judge might abuse its discretion by appointing counsel. And simply assuming that an exceptional-circumstances requirement must apply equally in either direction … is a legal as well as a logical fallacy."). Trial judges wield discretion to *deny* requests for appointed counsel, in any event, unless exceptional circumstances exist.

The Magistrate Judge saw no such circumstances here—and none is apparent. "Tutt filed this civil rights action nearly two years ago," the opinion observed, yet "he has done very little to prosecute his claims." Order at 1. Tutt made no effort to pin that failure on extraordinary circumstances. *Id.* at 3. And his repeated failure to work or even communicate with his lawyer—and his apparent lack of interest in prosecuting the case—didn't "aid his request for appointed counsel." *Id.* at 2.

After denying Tutt's motion on October 16, the Magistrate Judge ordered Tutt, by November 15, to "take affirmative steps to prosecute his claims, either *pro se* or with hired counsel." *Id.* If he did not, the Magistrate Judge reminded him, "his case is at risk of being dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute." *Id.*

Two weeks have now passed since that deadline without any response from Tutt. Under these circumstances, dismissal without prejudice is appropriate.

"Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (citation omitted). The Court may consider:

> "(1) whether the party's failure is due to willfulness, bad faith, or fault;"

2

> "(2) whether the adversary was prejudiced by the dismissed party's conduct;"

> "(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and"

> "(4) whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Id.* at 737.

Each factor favors dismissal. *First*, no matter the apparent difficulty of his circumstances in Owensboro, Tutt is at fault in the eyes of the law. He missed three separate deadlines spanning almost a year—one to respond to his lawyer's efforts to contact him, *see* DN 11, and two to hire counsel or proceed *pro se*, *see* DNs 18, 21. *See, e.g.*, *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366–68 (6th Cir. 1997) (missed deadlines and ignored court orders supported involuntary dismissal). The *second* factor—prejudice—is less clear, but still cuts against Tutt. Although "the record contains little, if any, evidence that the defendants were actually prejudiced by [Tutt's] failure to prosecute his claims," they have had to attend to this lingering litigation and remain responsive to the Court's orders and status requests. *Schafer*, 529 F.3d at 740–42. That imposes some cost, and therefore some prejudice, on any defendant waiting on and wondering about the litigation of an aging lawsuit. *Third*, Tutt's unresponsiveness followed two clear warnings. *See* DNs 11, 21. And *fourth*, the Court already considered "less drastic sanctions" by repeatedly affording Tutt opportunities to seek new counsel or file responses on his own behalf. *See Ellison v. Beavers*, No. 5:18-cv-74, 2021 WL 1069043, at *2 (W.D. Ky. Mar. 19, 2021).

Further, while the Court must afford *pro se* plaintiffs some leniency on matters that require legal sophistication, such as formal pleading rules, the same policy does not apply to court deadlines and other procedures readily understood by laypersons. "[T]he lenient treatment generally accorded to *pro se* litigants has limits. Where, for example, a *pro se* litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). This is particularly true if a *pro se* litigant fails to pursue a case. *See Jourdan*, 951 F.2d at 110. And trial judges have inherent authority to "ac[t] on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962).

## ORDER

Tutt's case has languished for two years without discernible progress. While evidence dissipates and memories fade, Tutt has failed to respond to the Court's orders and efforts to adjudicate his claims. Because of those repeated failures, the Court dismisses this case without prejudice for failure to prosecute.

Benjamin Beaton, District Judge
United States District Court

December 2, 2025